RALPH A. BAXTER AND MARJORIE J. BAXTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baxter v. Commissioner
Docket No. 28244-88
United States Tax Court
T.C. Memo 1991-312; 1991 Tax Ct. Memo LEXIS 364; 62 T.C.M. (CCH) 92; T.C.M. (RIA) 91312; July 9, 1991, Filed *364 Robert S. Schriebman, for the petitioners. Michael R. McMahon, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION This matter is before us on petitioners' motion for summary judgment. The basis for petitioners' motion is the allegation that the 3-year period under section 6501(a) [1] limiting respondent's authority to assess tax deficiencies against petitioners for 1977, 1978, 1980, and 1982 expired before respondent mailed his notice of deficiency to petitioners. The documentary evidence and affidavits submitted in support of petitioners' motion for summary judgment establish the following. Petitioners timely filed a joint Federal income tax return for 1980 on which were claimed investment tax credits of $ 32,646, of which $ 6,673 was applied to petitioners' 1980 Federal income tax liability. Petitioners timely filed an application to carry *365 back to 1977 and 1978 the excess tax credits from 1980 -- $ 22,367 to 1977 and $ 3,606 to 1978. On December 1, 1983, petitioners executed and delivered to respondent an agreement (Form 872-A, Special Consent to Extend the Time to Assess Tax) extending the period during which respondent could assess a deficiency with regard to petitioners' Federal income tax liability for 1980. On October 15, 1985, petitioners executed and delivered to respondent an agreement (Form 872-A) extending the period during which respondent could assess a deficiency with regard to petitioners' Federal income tax liability for 1982. The extension agreements executed by petitioners indicated that the period for respondent to assess deficiencies against petitioners with regard to their 1980 and 1982 Federal income tax liabilities was indefinitely extended until, among other things, the 90th day after respondent receives from petitioners a notice (Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax) terminating the extension agreements. On August 27, 1986, petitioners' attorney sent to respondent an original and a copy of a termination notice (Form 872-T). The termination *366 letter expressly stated that the periods "covered by" the termination notice were 1977, 1978, and 1982. The original of the termination notice was sent by certified mail to respondent's office in Laguna Niguel, California. The copy of the termination notice was sent by certified mail to respondent's office in El Monte, California. Accompanying the original and the copy of the termination notice sent by petitioners' attorney to respondent was a transmittal memorandum dated August 27, 1986, describing the termination notice. The "receipts for certified mail" that petitioners' attorney received from the U.S. Post Office at the time and with regard to the original and the copy of the termination notice that were sent to respondent on August 27, 1986, reflect the proper address for respondent's offices in Laguna Niguel and in El Monte, California. The "return receipts" that petitioners' attorney received from the U.S. Post Office confirming delivery of the envelopes (in which the original and the copy of the termination notice were mailed to respondent) indicate that the envelopes were received by respondent's Laguna Niguel office on August 28, 1986, and by respondent's El Monte office *367 on August 29, 1986. Respondent's records do not indicate that the termination notice was received by either respondent's Laguna Niguel or his El Monte office. No statement or indication was made in the termination notice to the effect that the termination notice was to apply to 1980. The termination notice, however, did refer to the December 1, 1983, extension agreement that had made reference to 1980 and that had included 1980 within the terms thereof. On August 30, 1988, petitioners sent respondent another copy of the termination notice that had been mailed to respondent on August 27, 1986. On September 6, 1988, petitioners executed and sent to respondent a revised termination notice (Form 872-T). This latter notice expressly made reference to 1980. On October 18, 1988, respondent issued his notice of deficiency to petitioners with regard to petitioners' 1980 and 1982 Federal income tax liabilities. OPINION Section 6501(a) provides generally that respondent may assess deficiencies in income taxes within a 3-year period after the due date of a timely filed return. Section 6501(c)(4) allows a taxpayer and respondent to consent in writing to extend the period for assessment. *368 Consent generally is manifested by the execution by the taxpayer and by respondent of an extension agreement (Form 872-A) which extends indefinitely the period for assessment. The taxpayer can terminate an 872-A extension agreement by submitting to respondent a termination notice (Form 872-T). Respondent has 90 days after receipt from a taxpayer of a termination notice to assess a tax deficiency before the assessment is barred by the statute of limitations. The receipts for certified mail that were issued to petitioners on August 27, 1986, constitute evidence that the original and copy of the termination notice were received by respondent's offices in Laguna Niguel and El Monte, California. We find that petitioners properly sent and that respondent received the original of petitioners' termination notice on August 28, 1986, the date indicated on the return receipt received by petitioners from the U.S. Post Office with regard to the delivery to respondent of the envelope in which the original termination notice was sent to respondent. Accordingly, petitioners' August 27, 1986, termination notice terminated, as of August 28, 1986, the extension period for assessment of a tax deficiency *369 by respondent against petitioners for 1982, which year was specifically referred to in petitioners' August 27, 1986, termination notice. Because respondent's notice of deficiency was not issued within 90 days after receipt on August 28, 1986, of petitioners' termination notice, respondent's deficiency determination against petitioners for 1982 is barred by the statute of limitations, and petitioners' motion for summary judgment is granted with regard thereto. As indicated, however, petitioners' termination notice of August 27, 1986, did not specifically refer to 1980. Accordingly, the extension agreement of December 1, 1983, with regard to 1980 was not terminated by petitioners' August 27, 1986, termination notice, and the extension agreement between petitioners and respondent with regard to 1980 remained in effect until on or about September 6, 1988, the date petitioners sent to respondent a revised and more specific termination notice expressly making reference to 1980. Petitioners note that although the August 27, 1986, termination notice did not expressly refer to 1980, it did expressly refer to the December 1, 1983, extension agreement, which extension agreement did refer *370 to 1980 and to the carryback years of 1977 and 1978. Petitioners therefore argue that the August 27, 1986, termination notice should be regarded as implicitly referring to 1980 and as implicitly incorporating 1980 into its terms. Respondent contends that an extension of the statute of limitations for a year can only be terminated by an express reference in the termination notice to each extension period a taxpayer intends to terminate. We agree with respondent that the August 27, 1986, termination notice did not terminate the extension period for 1980. As we recently stated in , the purpose of a termination notice is to "explicitly" inform taxpayers and respondent of the intent to terminate a period of limitations, of the kind of tax, and of the tax period(s) covered by the notice. Because the tax deficiencies determined herein by respondent against petitioners for 1977 and 1978 relate solely to the investment tax credit carrybacks from 1980, the statute of limitations under section 6501(a) with regard thereto is governed by the period of the statute of limitations applicable to 1980. Sec. 6501(j). Because we *371 have found in this case that the statutory period for assessment for 1980 was open when respondent issued his notice of deficiency with regard thereto, we also find that the statutory period under section 6501(j) with regard to the carrybacks to 1977 and 1978 also was open when respondent issued his notice of deficiency with regard thereto on October 18, 1988. Petitioners' final argument is that the period for assessment under an indefinite extension agreement is only operative for a reasonable period of time and that the approximate 5 years that lapsed under the December 1, 1983, extension agreement before respondent issued his notice of deficiency was unreasonable. Petitioners cite , in support of this proposition. In , we recently discussed , as follows -- McManus is far from clear as to what it considered to be the appropriate rule for termination of indefinite extension agreements, particularly since, in the final analysis, it concluded that the extension *372 agreements involved therein were in fact reasonably used. Since McManus was decided, we have held that the current version of Form 872-A may be terminated only with a Form 872-T or a notice of deficiency. . See also , affg. per curiam an order of this Court. We reached this result both because the Form 872-A explicitly allowed only two methods of termination and because the revised Form 872-A was meant to reduce the uncertainty that had surrounded indefinite extension agreements by eliminating the question of whether various written communications constituted termination letters. . We think that both of those concerns are implicated here. Firstly, the Forms 872-A involved herein specifically allow a taxpayer to terminate it in writing on a Form 872-T. The parties to the extension agreement should be held to that term. See . Secondly, certainty in the use of Form 872-A is further enhanced by not interpreting it to end by operation of law after *373 a reasonable time. If the extension agreements of the type involved herein were held to end after a reasonable period of time without the giving of prior notice, we would be forced to make an inquiry into the facts and circumstances of every case in which a Form 872-A was utilized. Therefore, we hold that extension agreements that contain specific termination provisions do not end by operation of law after a reasonable time. To the extent that , requires a different result, we will no longer follow it. Our position in this regard is reinforced by the very recent opinion in , afg. A Memorandum Opinion of this Court, in which the Ninth Circuit Court of Appeals stated "Since silence is not an acceptable alternative to use of the Form 872-T and since neither the taxpayer nor the Service executed and mailed a Form 872-T, the extension could terminate only by the mailing of a statutory notice of deficiency" without making any reference to its affirmance of McManus. . [. Fn. refs. omitted.]
*374 Alternatively, because this case is appealable to the United States Court of Appeals for the Ninth Circuit, it is appropriate that we make an express finding as to the reasonableness of respondent's issuance in this case of a notice of deficiency approximately 5 years after the extension agreement was entered into. See , affd. . We believe that it was reasonable, and we so find. Petitioners' motion for summary judgment will be denied as to 1980, denied as to the carrybacks from 1980 to 1977 and 1978, and granted as to 1982. An appropriate order will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩